ANTHONY A. FRIEDMAN (State Bar No. 201955)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:   (310) 229-1244
Email: AAF@LNBYB.COM

Attorneys for Alfred H. Siegel, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| **In re:** | **Case No.: 2:11-bk-62283-BB** |
| **GENIUS PRODUCTS, LLC,** | **Chapter 7 Case** |
| **Debtor.** | **NOTICE OF MOTION AND MOTION FOR APPROVAL OF AMENDMENT TO POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c)** |
| | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| | **DECLARATION OF ALFRED H. SIEGEL IN SUPPORT THEREOF** |
| | **Hearing:** |
| | Date:    **June 28, 2017** |
| | Time:    **10:00 a.m.** |
| | Place:  **Courtroom 1539** |
| | **255 East Temple Street** |
| | **Los Angeles, CA 90012** |

1

**PLEASE TAKE NOTICE** that a hearing will be held on June 28, 2017 at 10:00 a.m., before the Honorable Sheri Bluebond, in Courtroom 1539, located at 255 E. Temple Street, Los Angeles, California 90012, for the Court to consider the motion ("Motion") filed by Alfred H. Siegel (the "Trustee"), the Chapter 7 Trustee for the bankruptcy estate (the "Estate") of Genius Products, LLC (the "Debtor"), for an order authorizing the Trustee to enter into that certain post-petition Amended Litigation Funding Agreement dated February 20, 2017 (the "Amended Agreement") with World Wrestling Entertainment, Inc. ("WWE") and LD Entertainment LLC ("LD" and, together with WWE, the "Funding Parties").  The Amended Agreement amends the Litigation Funding Agreement dated as of September 25, 2015 (the "Original Agreement") and approved by Order of the Bankruptcy Court dated November 13, 2015 [Docket No. 152]. The Original Agreement provided that the Funding Parties will advance a maximum of $250,000 (the "Advance") to fund certain out-of-pocket litigation costs and expenses (the "Out-Of-Pocket Costs") related to the prosecution of the Estate's claims (the "TWC Litigation") against The Weinstein Company, LLC and The Weinstein Company Holdings LC (collectively, "Weinstein"). The Amended Agreement increases the maximum Advance to $366,680.  A true and correct copy of the Amended Agreement is attached as **Exhibit "1"** to the declaration of Alfred H. Siegel (the "Siegel Declaration") annexed to the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice, the Motion, the memorandum of points and authorities and Siegel Declaration in support thereof, the documents and pleadings on file herein, all judicially noticeable facts, the arguments and representations of counsel, and such other evidence as may be presented prior to or at the scheduled hearing.

**PLEASE TAKE FURTHER NOTICE** that if a party is interested in receiving a copy of the Motion, they should submit a written request to counsel for the Trustee at the address located in the upper-left hand corner of the first page of this Notice.

1    **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-

2    1(f), any party opposing the relief requested in the Motion must file and serve a written opposition

3    no later than fourteen (14) days prior to the hearing on the Motion.

4    **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Rule 9013-1(h) failure of

5    any party to so file and serve such written opposition may be deemed consent to the granting of

6    the Motion.

7    DATED:  June 5, 2017                          LEVENE, NEALE, BENDER,
                                                     YOO & BRILL, L.L.P.
8

9

10                                                  BY:   /s/ Anthony A. Friedman
                                                          ANTHONY A. FRIEDMAN
11                                                  Attorneys for Alfred H. Siegel, Chapter 7 Trustee for
                                                    the Bankruptcy Estate of Genius Products, LLC
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

A.    **Case Background**

1.    This case was commenced by the filing of an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code on December 27, 2011 (the "Petition Date") against Genius Products, LLC (the "Debtor") [Docket No. 1].

2.    On May 4, 2012, the Court entered that certain *Order for Relief on Involuntary Bankruptcy Petition* (the "Order for Relief") [Docket Nos. 13, 14 and 15].  Shortly thereafter, Alfred H. Siegel (the "Trustee") was appointed as the Chapter 7 trustee for the Debtor's bankruptcy estate (the "Estate"), a capacity which he continues to serve.

3.    The Trustee is informed and believes that the Debtor was an entertainment company which distributed movies, through stores such as Target and Wal-Mart, for such companies including Entertainment Rights, Classic Media, Sesame Workshop (from 2007 to 2009), Random House, ESPN, Discovery Communications, ImaginAsian, World Wrestling Entertainment, IFC Films, and PorchLight Entertainment.

B.    **The TWC Litigation**

4.    Despite the lack of cooperation from the Debor in this case, the Trustee obtained records that evidenced that during the four years prior to the Petition Date, the Debtor transferred approximately $130 million to The Weinstein Company LLC and The Weinstein Company Holdings LLC (collectively, "Weinstein").

5.    After completing his analyses of the Debtor's business records and potential claims against Weinstein (the "Weinstein Claims"), the Trustee determined that the Weinstein Claims were meritorious and litigation should be commenced against Weinstein (the "TWC Litigation").

6.    On February 16, 2015, the Trustee filed an application for a Court order (the "Application") authorizing his employment of Robins Kaplan LLP ("RK") as special litigation counsel to pursue the TWC Litigation on a contingency fee basis pursuant to the terms set forth in

the engagement letter dated January 30, 2015 (the "Engagement Letter") [Docket No. 98].  On March 30, 2015, the Bankruptcy Court entered its Order approving the Application [Docekt No. 113].

7.    On May 8, 2015, the Trustee filed a complaint against Weinstein alleging fraudulent transfer and other claims for relief, thereby commencing adversary proceeding no. 2:15-ap-1241-BB [Docket No. 120].

**C.    The Need for Post-Petition Financing to Fund the TWC Litigation**

8.    As set forth in the Application and Engagement Letter, all costs incurred by RK or owing to third parties (the "Out-of-Pocket Costs"), such as expert witness fees, deposition costs, etc., shall be paid currently by the Trustee. As the Estate does not currently have assets to pay the Out-of-Pocket Costs, RK's obligation to perform services is specifically conditioned upon the Trustee obtaining financing for the Out-of-Pocket Costs.

9.    Accordingly, the Trustee began to evaluate his options, such as approaching several potential funding sources – including creditors World Wrestling Entertainment, Inc. ("WWE") and LD Entertainment LLC ("LD" and, together with WWE, the "Funding Parties") – to finance the Out-Of-Pocket Costs for the TWC Litigation.

10.    After negotiations, the Funding Parties agreed to provide the Trustee with funds, in the maximum amount of $250,000, to pay for the Out-of-Pocket Costs (the "Advance"). Subsequently, the Trustee and the Funding Parties entered into that certain Litigation Funding Agreement dated June 23, 2015 (the "Original Agreement") to document the terms of the arrangement.  On August 3, 2015, the Trustee filed a motion for approval of the Original Agreement [Docket No. 122].  On November 13, 2015, the Bankruptcy Court entered its Order approving the Original Agreement [Docket No. 152].

**C.    Salient Terms of the Original Agreement**

11.    The salient terms of the Original Agreeement are as follows:

- Financed Amount: Maximum amount of $250,000.

- <u>Limitations on Use</u>: The Advance shall be used solely for the following expenses arising out of or related to the TWC Litigation: (i) actual, ordinary and necessary out-of-pocket costs charged by third party vendors unrelated to RK; (ii) actual, ordinary and necessary out-of-pocket expenses paid by RK without markup; or (iii) only with the prior written consent of the Funding Parties, charges for services provided by RK or RK affiliates at greater than actual costs, such as e-discovery and trial-support services.

- <u>Allowance of the WWE and LD Claims</u>: WWE shall have an allowed general unsecured claim in the amount of $6,232,468.62 and an allowed priority claim in the amount of $23,534.50.  LD shall have an allowed general unsecured claim in the amount of $2,425,693.81.

- <u>Administrative Priority of the Advance</u>: The Advance shall be entitled to Chapter 11 administrative expense status under Section 507(a)(2) , and will be paid first from the proceds of the TWC Litigation.

- <u>Distribution of Assets Recovered from the TWC Litigation</u>: After the Advance has been fully repaid, and after RK has been paid its contingency fee (as set forth in the Engagement Letter), the Funding Parties shall receive 85% of the Trustee's recovery from the TWC Litigation until 50% of their allowed unsecured claims have been paid.  Thereafter, the Trustee will distribute any remaining funds first to administraive claims, and then to priority claims of the Estate.  Lastly, any remaining funds recovered from the TWC Litigation will be distributed pro-rata to general unsecured creditors of the Estate.

**D.**     **<u>The Proposed Amended Agreement.</u>**

12.     The Trustee has been pursuing the TWC Litigation for almost two years and now has a better sense than before of the projected Out-Of-Pockets Costs to be incurred through trial. The Trustee has concluded that, in the event that the TWC Litigation proceeds to trial, the Out-Of-Pocket Costs may exceed $250,000.  When the Trustee negotiated the $250,000 amount, the

Trustee had no documents and was unaware of a storage facility maintained by Trevor Drinkwater, the Debtor's former CEO, that contained over 900 boxes of books, records, and related material.  The Trustee reviewed the contents and then scanned and made searchable about 200 boxes of material. The amount of electronic material now in the Trustee's possession is voluminous, and significant unexpected expense has been incurred in managing the material.  The Trustee has identified additional experts witnesses and wants to ensure that funds are available to ensure that the expert fees are paid currently.  The Trustee is now more specifically aware of the potential witnesses and depositions to be taken in two or more states and related expenses.  Finally, at Weinstein's insurer's request, the Trustee has agreed, prior to the completion of discovery, to a mediation with Bruce Friedman, Esq. of JAMS, scheduled for June 12, 2017, which early mediation expense was not contemplated at the outset.

13.    Based upon the projected need for additional funding, the Trustee approached the Funding Parties and requested a modification to the Original Agreement that would increase the $250,000 funding cap.  The Funding Parties agreed and the parties have entered into the Amended Agreement.    The Amended Agreement modifies the Original Agreement to increase the maximum Advance from $250,000 to $366,680.  In exchange for the increase, in the event that the Advance exceeds $250,000 (the difference between the amount advanced and $250,000, the "Excess Advance"), the amount of the administrative expense shall be equal to $250,000 plus four times the amount of the Excess Advance (*i.e.*, return of the Excess Advance plus a fee of three times the Excess Advance). By way of example, if the Advance is $350,000, the administrative expense will be $650,000, which is the sum of $250,000 plus ($100,000 x 4).  A redline showing the changes to the Original Agreement is attached as **Exhibit "2"** to the Siegel Declaration.[1]

---

[1] The Motion to approve the Original Agreement included the disclosure required by Rule 4001(c)(1)(B) of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 4001-2(b) and (d).  There are no changes to the Original Agreement other than as described in this paragraph and set forth in the attached redline.

## II.

## DISCUSSION

**A.    The Amended Agreement Is Appropriate**

Because the Amended Agreement provides for a post-petition loan, the Trustee must obtain authorization from the Court after notice and a hearing.  11 U.S.C. § 364.  Section 364(c) of the Bankruptcy Code provides:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).  In determining whether such financing should be approved, some courts have applied a three part test to assess whether: (1) the debtor or trustee cannot obtain credit unencumbered or without superpriority status; (2) the credit transactions are necessary to preserve assets of the estate; and (3) the terms of the credit agreement are fair, reasonable and adequate.  In re Crouse Group, Inc., 71 B.R. 544 (Bankr. E.D. Pa. 1987), aff'd., 75 B.R. 553 (E.D. Pa. 1987).

As set forth above, the Court previously approved the Original Agreement.  The only changes to the Original Agreement set forth in the Amended Agreement are (1) an increase in the maximum advance from $250,000 to $366,680, and (2) the repayment of the Excess Claim in an amount equal to four times the Excess Claim.

The Trustee submits that the proposed modifications to the previously approved Original Agreement are reasonable, will benefit the estate, and should be approved.  Weinstein is a well-funded defendant.  In order to properly litigate the TWC Litigation, the Trustee requires funding to pay for the ongoing and projected Out-Of-Pocket Costs.  The proposed repayment terms of the Excess Advance – an amount equal to four times the Excess Advance – is a reasonable term for a non-recourse loan that will only be repaid from the litigation proceeds. *See, e.g., In re Downey*

1    *Financial Corp.*, Case No. 08-13041-CSS (Bankr. D. Del.) [Docket Nos. 874 and 908] (funding

2    parties entitled to 27.5% of litigation proceeds).

3                                            **III.**

4                                      <u>**CONCLUSION**</u>

5            Based upon all of the foregoing, the Trustee respectfully requests that the Court enter an

6    order:

7            1.      Granting the Motion;

8            2.      Authorizing the Trustee to enter into the Amended Agreement with the Financing

9    Parties on the terms and conditions set forth therein; and

10           3.      Granting such other and further relief as the Court deems just and proper.

11   DATED:  June 5, 2017                      LEVENE, NEALE, BENDER,
12                                             YOO & BRILL, L.L.P.

13

14                                            BY:  <u>/s/ Anthony A. Friedman</u>
                                                   ANTHONY A. FRIEDMAN
15                                            Attorneys for Alfred H. Siegel, Chapter 7 Trustee for
                                              the Bankruptcy Estate of Genius Products, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF ALFRED H. SIEGEL

I, ALFRED H. SIEGEL, hereby declare as follows:

1.      I am over 18 years of age.  Except where otherwise stated, I have personal knowledge of the facts set forth below and, if called to testify, I could and would testify competently thereto.

2.      I am the duly appointed and acting Chapter 7 trustee for the bankruptcy estate of Genius Products, LLC (the "Debtor").  I have reviewed and am familiar with and am knowledgeable about the Debtor's books and records, which books and records are made in the regular practice of business, kept in the regular course of business, made by a person with knowledge of the events and information related thereto, and made at or near the time of events and information recorded.  This Declaration is based on my personal knowledge and information and the Debtor's books and records.

3.      I make this declaration in support of my *Motion For Approval Of Amendment To Post-Petition Financing Pursuant To 11 U.S.C. § 364(c)* (the "Motion") to which this declaration is attached.  Unless otherwise stated, all capitalized terms herein have the same meanings as in the Motion to which this declaration is attached.

4.      This case was commenced by the filing of an involuntary petition for relief under Chapter 7 of Title 11 of the United States Code on December 27, 2011 (the "Petition Date") against the Debtor [Docket No. 1].

5.      On May 4, 2012, the Court entered that certain *Order for Relief on Involuntary Bankruptcy Petition* (the "Order for Relief") [Docket Nos. 13, 14 and 15].  Shortly thereafter, I was appointed as the Chapter 7 trustee for the Debtor's bankruptcy estate (the "Estate"), a capacity which I continue to serve.

6.      I am informed and believe that the Debtor was an entertainment company which distributed movies, through stores such as Target and Wal-Mart, for such companies including Entertainment Rights, Classic Media, Sesame Workshop (from 2007 to 2009), Random House,

1   ESPN, Discovery Communications, ImaginAsian, World Wrestling Entertainment, IFC Films,

2   and PorchLight Entertainment.

3          7.      Despite the lack of cooperation from the Debor in this case, I obtained records that

4   evidenced that during the four years prior to the Petition Date, the Debtor transferred

5   approximately $130 million to The Weinstein Company LLC and The Weinstein Company

6   Holdings LLC (collectively, "Weinstein").

7          8.      After completing my analyses of the Debtor's business records and potential

8   claims against Weinstein and Drinkwater (the "Weinstein Claims"), I determined that the

9   Weinstein Claims were meritorious and comenced litigation against Weinstein (the "TWC

10  Litigation").

11         9.      On February 16, 2015, I filed an application for a Court order (the "Application")

12  authorizing the employment of Robins Kaplan LLP ("RK") as special litigation counsel to pursue

13  the TWC Litigation on a contingency fee basis pursuant to the terms set forth in the engagement

14  letter dated January 30, 2015 (the "Engagement Letter") [Docket No. 98]. On March 30, 2015, the

15  Bankruptcy Court entered its Order approving the Application [Docket No. 113].

16         10.     On May 8, 2015, I filed a complaint against Weinstein alleging fraudulent transfer

17  and other claims for relief, thereby commencing adversary proceeding no. 2:15-ap-1241-BB

18  [Docket No. 120].

19         11.     As set forth in the Application and Engagement Letter, all costs incurred by RK or

20  owing to third parties (the "Out-of-Pocket Costs"), such as expert witness fees, deposition costs,

21  etc., shall be paid currently by me. As the Estate does not currently have assets to pay the Out-of-

22  Pocket Costs, RK's obligation to perform services is specifically conditioned upon me obtaining

23  financing for the Out-of-Pocket Costs.

24         12.     Accordingly, I began to evaluate my options, such as approaching several potential

25  funding sources – including creditors World Wrestling Entertainment, Inc. ("WWE") and LD

26  Entertainment LLC ("LD" and, together with WWE, the "Funding Parties") – to finance the Out-

27  Of-Pocket Costs for the TWC Litigation.

28

13.    After negotiations, the Funding Parties agreed to provide me with funds, in the maximum amount of $250,000, to pay for the Out-of-Pocket Costs (the "Advance"). Subsequently, the Funding Parties and I entered into that certain Litigation Funding Agreement dated June 23, 2015 (the "Original Agreement") to document the terms of the arrangement.  On August 3, 2015, I filed a motion for approval of the Original Agreement [Docket No. 122].  On November 13, 2015, the Bankruptcy Court entered its Order approving the Original Agreement [Docket No. 152].

14.    I have been pursuing the TWC Litigation for almost two years and now have a better sense than before of the projected Out-Of-Pockets Costs to be incurred through trial.  I have concluded that, in the event that the TWC Litigation proceeds to trial, the Out-Of-Pocket Costs may exceed $250,000.  When I negotiated the $250,000 amount, I had no documents and was unaware of a storage facility maintained by Trevor Drinkwater, the Debtor's former CEO, that contained over 900 boxes of books, records, and related material.  I reviewed the contents and then scanned and made searchable about 200 boxes of material. The amount of electronic material now in my possession is voluminous, and significant unexpected expense has been incurred in managing the material.  I have identified additional experts witnesses and want to ensure that funds are available to ensure that the expert fees are paid currently.  I am now more specifically aware of the potential witnesses and depositions to be taken in two or more states and related expenses.  Finally, at Weinstein's insurer's request, I have agreed, prior to the completion of discovery, to a mediation with Bruce Friedman, Esq. of JAMS, scheduled for June 12, 2017, which early mediation expense was not contemplated at the outset.

15.    Based upon the projected need for additional funding, I approached the Funding Parties and requested a modification to the Original Agreement that would increase the $250,000 funding cap.  The Funding Parties agreed and the parties have entered into the Amended Agreement.  The Amended Agreement modifies the Original Agreement to increase the maximum Advance from $250,000 to $366,680.  In exchange for the increase, in the event that the Advance exceeds $250,000 (the difference between the amount advanced and $250,000, the

1  "Excess Advance"), the amount of the administrative expense shall be equal to $250,000 plus four

2  times the amount of the Excess Advance (*i.e.*, return of the Excess Advance plus a fee of three

3  times the Excess Advance). By way of example, if the Advance is $350,000, the administrative

4  expense will be $650,000, which is the sum of $250,000 plus ($100,000 x 4). A copy of the

5  Amended Agreement is attached as **Exhibit "1,"** and a redline showing the changes to the

6  Original Agreement is attached as **Exhibit "2."**

7       16.    I have determined that the terms and conditions in the Amended Agreement are

8  fair, reasonable, and necessary to the successful prosecution of the TWC Litigation. Accordingly,

9  I request that the Court authorize me, on behalf of the Estate, to enter into the Amended

10  Agreement.

11       I declare under penalty of perjury that the foregoing is true and correct to the best of my

12  knowledge.

13       Executed this **31** day of May, 2017, at Woodland Hills, California.

16  ALFRED H. SIEGEL
   Not Individually and Solely in His Capacity
17  as Chapter 7 Trustee

13

# EXHIBIT 1

## AMENDED LITIGATION FUNDING AGREEMENT

This Amended Litigation Funding Agreement ("Agreement") is entered into as of February 20, 2017 (the "Agreement Date"), by and among Alfred H. Siegel, as chapter 7 trustee (the "Trustee") for Genius Products, LLC (the "Debtor"), on the one hand, and World Wrestling Entertainment, Inc. ("WWE") and LD Entertainment LLC ("LD" and, together with WWE, the "Funding Parties"), on the other hand (each of the Trustee and the Funding Parties shall be referred to herein as a "Party" and, together, the Trustee and the Funding Parties shall be referred to herein collectively as the "Parties"), with reference to the following facts and recitals:

### RECITALS

A.     On December 27, 2011 (the "Petition Date"), an involuntary bankruptcy petition was filed against the Debtor in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court") commencing the chapter 7 bankruptcy case known as *In re Genius Products, LLC*, currently pending in the Bankruptcy Court as Case No. 2:11-bk-62283-RN (the "Case"). On May 4, 2012, the Bankruptcy Court entered its order for relief. The Trustee is the duly appointed chapter 7 trustee in the Case.

B.     On August 14, 2013, WWE filed a proof of claim in the Case, Claim 6-1, in the amount of $6,110,022.41 plus interest, as well as a priority claim of $23,534.50 (the "WWE Claim").

C.     On February 3, 2015, LD filed a proof of claim in the Case, Claim 9-1, in the amount of $2,425,693.81 (the "LD Claim").

D.     As of the Agreement Date, the total amount of claims filed in the Case by parties other than WWE and LD was approximately $1,454,246.39.

E.     The Trustee has determined that he holds meritorious claims against The Weinstein Company LLC and The Weinstein Company Holdings LLC (collectively, "Weinstein") and Trevor Drinkwater (collectively, the "TWC Litigation").

F.     On March 30, 2015, the Bankruptcy Court entered its order authorizing the Trustee to employ Robins Kaplan LLP ("RK") as special litigation counsel to pursue the TWC Litigation on a contingent fee basis pursuant to terms set forth in an engagement letter dated January 30, 2015 (the "Engagement Letter").

G.     Pursuant to the terms of the Engagement Letter, the Trustee is required to advance the actual out-of-pocket costs of the TWC Litigation. The Trustee does not have sufficient cash in the estate to advance these expenses and approached WWE and LD with a request that they fund these items so that he may pursue the TWC Litigation. WWE and LD have agreed to fund certain costs of the TWC Litigation on the terms and conditions set forth below.

H.     WWE, LD and the Trustee entered into a certain Litigation Funding Agreement dated as of September 25, 2015 (the "Original Agreement"), which was approved by an Order of the Bankruptcy Court dated November 13, 2015 [Dkt. No. 152]. The Original Agreement provided that the Funding Parties would advance up to $250,000.

1

I.    The Trustee recently determined that $250,000 may not be sufficient to adequately fund his expenses in connection with the TWC Litigation. He requested that the Funding Parties agree to fund up to an additional $116,680 for a total of $366,680. The Funding Parties are willing to commit to fund this amount under the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing facts and recitals and of the covenants, promises, and conditions hereinafter set forth, the receipt and adequacy of which are hereby acknowledged, the Parties hereto agree as follows:

## AGREEMENT

1.    <u>Effective Date</u>. The first business day following entry of a final, non-appealable order of the Bankruptcy Court approving this Agreement shall be referred to as the "<u>Effective Date</u>".

2.    <u>Bankruptcy Court Approval</u>. This Agreement is subject to approval of the Bankruptcy Court in the Case. Within seven days after execution of this Agreement by all of the Parties, the Trustee shall file with the Bankruptcy Court a motion seeking approval of this Agreement.

3.    <u>Advance</u>. The Funding Parties shall advance up to a maximum amount of $366,680 in the aggregate to fund reimbursable expenses (as set forth below) associated with the TWC Litigation on the terms and conditions set forth herein.

4.    <u>Limitation of Liability of Funding Parties</u>. In no event shall the Funding Parties be required to advance or otherwise pay more than an aggregate of $366,680 related to the TWC Litigation (the aggregate amount advanced from time to time, the "<u>Advance</u>").

5.    <u>Limitation of Liability of Trustee</u>. In no event shall the Trustee have any personal liability to the Funding Parties. Any recourse the Funding Parties may have related to the Trustee will be limited to the bankruptcy estate of Genius Products, LLC.

6.    <u>Reimbursable Expenses</u>. Funds advanced will be used by the Trustee solely to satisfy, or reimburse RK or the Trustee for the following expenses arising out of or related to the TWC Litigation: (i) actual, ordinary and necessary out-of-pocket costs charged by third party vendors unrelated to RK; (ii) actual, ordinary and necessary out-of-pocket expenses paid by RK or the Trustee without markup; or (iii) only with the prior written consent of the Funding Parties, charges for services provided by RK or RK affiliates at greater than actual cost, such as e-discovery and trial-support services. Reimbursable expenses shall not exceed $200,000 for expert fees and costs, $34,500 for deposition transcripts or $132,180 for all other costs without the prior written consent of the Funding Parties (the "<u>Line Item Caps</u>"). Consent to modification of the Line Item Caps shall not be unreasonably withheld ; *provided, however*, that in no event shall the total amount advanced by the Funding Parties exceed $366,680 in the aggregate.

7.    <u>Payment of Advances</u>. Advances shall be made by the Funding Parties no later than 30 days following presentation of invoices by the Trustee.

2

8.    <u>Allocation of Advances</u>. WWE shall be responsible for 2/3 and LD shall be responsible for 1/3 of each required payment. In the event either of the Funding Parties fails to make any payment of a requested Advance pursuant to Section 9 hereof, following 10 days written notice and an opportunity to cure, (i) the other Funding Party shall make the entire payment and (ii) all allowed claims of the breaching Funding Party shall be deemed assigned to the other Funding Party.

9.    <u>Allowed Claims of Funding Parties</u>. WWE shall have an allowed general unsecured claim in the amount of $6,232,468.62 plus an allowed §507(a)(2) priority claim of $23,534.50 without further application to the Bankruptcy Court. LD shall have an allowed general unsecured claim in the amount of $2,425,693.81 without further application to the Bankruptcy Court. Allowance of these claims shall be a condition to funding and shall be included in the order of the Bankruptcy Court approving the Agreement. In the event of a surplus estate, the claims of the Funding Parties shall include, in addition to the amounts set forth herein, postpetition interest at the rate provided in section 685.010 of the California Code of Civil Procedure.

10.    <u>Repayment of the Advance and Fee</u>. The Advance shall be an administrative expense with priority set forth in section 507(a)(2) of the Bankruptcy Code. From the gross recovery by the Trustee in the TWC Litigation, the Funding Parties shall receive the first money recovered (in the same proportion as the Funding Parties funded the Advance) until they have been repaid the full amount of the Advance. In the event the Advance exceeds $250,000 (the difference between the amount advanced and $250,000, the "<u>Excess Advance</u>"), the amount of the administrative expense shall be equal to $250,000 plus four times the amount of the Excess Advance (i.e., return of the Excess Advance plus a fee of three times the Excess Advance)(collectively, the "Advance Claim"). By way of example, if the Advance is $350,000, the administrative expense will be $650,000, which is the sum of $250,000 plus ($100,000 x 4). The Advance Claim shall be paid 2/3 to WWE and 1/3 to LD.

11.    <u>Preferred Prepetition Claim Repayment</u>. After the Advance Claim has been paid in full, and after RK has been paid its contingency fee as set forth in the Engagement Letter, the Funding Parties shall receive the first $500,000 of the Trustee's share of the recovery from the TWC Litigation (the "<u>Preferred Prepetition Claim Repayment</u>"). The payment of the Preferred Prepetition Claim Repayment to the Funding Parties shall be made pro rata based on their general unsecured claims, with 72% going to WWE and 28% going to LD. These payments shall be made as soon as reasonably practicable following receipt of funds by the Trustee. Thereafter, at the time the Trustee distributes funds to prepetition unsecured creditors, (1) WWE shall be paid its priority claim and (2) the Funding Parties shall receive their pro rata share of distributions to prepetition general unsecured creditors based on the total amount of the allowed claims of the Funding Parties as set forth in paragraph 9 (i.e., not reduced by the Preferred Prepetition Claim Repayment) above divided by the total amount of all allowed claims of general unsecured creditors until such claims have been paid in full. The foregoing notwithstanding, in no event shall the Funding Parties receive distributions (including the Preferred Prepetition Claim Repayment) in excess of the Advance Claim plus the total amount of their allowed claims as set forth in paragraph 9. By way of example, assume the matter settles after the defendant files an answer but more than 60 days before trial and the Trustee recovers $13,076,923.08 from the TWC Litigation (resulting in a contingency fee for RK of $5,076,923.08, and the Trustee's share of the recovery is $8,000,000), the Advance Claim is $250,000, proceeds of other estate assets is $300,000, chapter 7 administrative costs are $500,000, and general unsecured claims other than the claims of the Funding Parties are $1,500,000. Upon payment of the $8,000,000 to the Trustee, the Funding Parties would promptly receive repayment of the Advance Claim of $250,000 plus $500,000. This leaves a balance of $7,250,000 for distribution, which is distributed

3

$500,000 to administrative claims and $23,534.50 to WWE's priority claim, leaving $6,726,465.50 available for distribution to general unsecured creditors. Of this amount, the Funding Parties would receive, in addition to the Advance Claim and the Preferred Prepetition Claim Repayment, the sum of $5,733,205.32, which is the product of 6,726,465.5 x (6,232,468.62+2,425,693.81) / (6,232,468.62+2,425,693.81+1,500,000).

12.    Representations and Warranties of Parties. Each Party represents and warrants to the other Party that (a) such Party has the full right, capacity, power, and authority to execute and deliver this Agreement, to perform the Party's obligations hereunder, and to consummate the transactions contemplated hereby, and (b) this Agreement has been duly executed and delivered by the Party and, assuming due authorization, execution, and delivery by the other Parties, constitutes the legal, valid, and binding obligations of the Party enforceable in accordance with its terms and conditions. Each Party further represents that it has had the opportunity to consult with attorneys of its own selection, and has carefully read and understands the scope and effect of the provisions of this Agreement.

13.    Interpretation. Each Party hereto has been represented by independent counsel in conjunction with the negotiation and formulation of this Agreement and, accordingly, this Agreement shall be construed as if negotiated and drafted jointly by each of the Parties hereto, and shall be interpreted and construed accordingly, and without regard to or aid of California Civil Code Section 1654.

14.    Expenses. Each Party shall bear its own costs, expenses, and attorney's fees, incurred in, or arising out of, or connected with, the preparation of this Agreement.

15.    Entire Agreement. This Agreement represents and contains the entire agreement and understanding among the Parties hereto with respect to the subject matter of this Agreement, and supersedes any and all prior oral and written agreements and understandings. No representation, warranty, condition, understanding, or agreement of any kind with respect to the subject matter hereof shall be relied upon by the Parties unless incorporated herein.

16.    Third Party Beneficiaries. RK is an intended beneficiary of this Agreement. Other than RK, this Agreement does not and is not intended to confer any rights or remedies upon any person other than the Parties.

17.    Severability. Should any of the provisions of this Agreement be held by a court of competent jurisdiction to be illegal, in conflict with any applicable law, or otherwise unenforceable for any reason, in whole or in part, the validity of the remaining portions or provisions of the Agreement and of the entire Agreement shall not be affected thereby, but shall be severable and shall remain in force and effect.

18.    Further Assurances/Cooperation. Each Party to this Agreement agrees to cooperate in a timely manner with the other Parties to carry out the purpose and effect of this Agreement including, without limitation, the execution, notarization and delivery of such other and further instruments, documents and writings as may reasonably be requested to effectuate the terms and conditions of this Agreement.

19.    Authority. By signing below, each signatory represents in its individual capacity that it has been duly authorized to enter into this Agreement on behalf of the Party for whom it is purporting to sign.

4

20.    Titles and Headings. Titles and headings of sections of this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

21.    Attorneys' Fees. In the event that any Party takes legal action with respect to the enforcement of this Agreement, the prevailing Party shall recover its costs, fees and expenses related to such action including, without limitation, reasonable attorneys' fees.

22.    Binding on Successors. Except as may otherwise be expressly consented and agreed to by the Parties, each and every provision, agreement, term, covenant, and condition herein contained to be performed, fulfilled, observed, and kept shall be binding upon the heirs, successors, executors, administrators, beneficiaries, and assigns of the respective Parties to this Agreement, and the rights hereunder, and all rights, privileges, and benefits arising under this Agreement and in favor of any Party, shall be available in favor of the heirs, successors, executors, administrators, and assigns thereof, respectively.

23.    Governing Law. This Agreement shall be governed by the laws of the State of California, and any question arising under this Agreement shall be construed or determined according to such law.

24.    Notices. All notices, requests, demands and other communications required under this Agreement shall be in writing, in English and shall be deemed to have been duly given if delivered (a) personally, (b) by facsimile transmission with written confirmation of receipt, (c) by overnight delivery with a reputable national overnight delivery service or (d) by mail or by certified mail, return receipt requested and postage prepaid. Any notice given shall be deemed given upon the actual date of such delivery. If notice is given, it shall be given at the address set forth below. It shall be the responsibility of the Parties to notify the other Parties in writing of any name or address changes.

If to the Trustee:

A. Siegel & Associates
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

with a copy to:
Anthony A. Friedman, Esq.
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067

If to WWE:

James W. Langham
SVP & Assistant General Counsel
WWE
1241 East Main Street
Stamford, CT 06902

with a copy to:

Michael B. Lubic
K&L Gates LLP
10100 Santa Monica Blvd., Ste. 800
Los Angeles, CA 90067

If to LD:

LD Entertainment
9000 Sunset Blvd., Ste. 600
West Hollywood, CA 90060
Attn.: Jesse Liddell

With a copy to:

Jay Shanker
McAfee & Taft
211 N. Robinson, Suite 1000
Two Leadership Square, 10th Floor
Oklahoma City, OK 73102

Each of the parties to this Agreement may specify a different address by giving notice in accordance with this Section 24 to each of the other parties hereto.

    25.    Retention of Jurisdiction. The Bankruptcy Court shall retain jurisdiction to resolve any disputes that may arise under this Agreement.

    26.    Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed one and the same instrument. This Agreement also may be executed via facsimile or pdf. In that event, the Agreement shall be effective when the last required signature is faxed or emailed and received by counsel for each of the Parties.

    27.    Amendment and Waiver. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by the Parties. No waiver by any Party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence.

    28.    Recitals. The recitals of fact set forth above are incorporated by reference as if fully set forth in this Agreement.

6

Alfred H. Siegel as Chapter 7 Trustee for
Genius Products, LLC

_____

World Wrestling Entertainment, Inc.:

By: _____

Its: _____


LD Entertainment LLC:

By: _____
Its: _____

7

Alfred H. Siegel as Chapter 7 Trustee for
Genius Products, LLC

World Wrestling Entertainment, Inc.:

By: _____
Its: _____


LD Entertainment LLC:

By: _____
Its: _Executive   Vice President_

7

# EXHIBIT 2

## AMENDED LITIGATION FUNDING AGREEMENT

This Amended Litigation Funding Agreement ("Agreement") is entered into as of ~~September 24, 2015~~February ____, 2017 (the "Agreement Date"), by and among Alfred H. Siegel, as chapter 7 trustee (the "Trustee") for Genius Products, LLC (the "Debtor"), on the one hand, and World Wrestling Entertainment, Inc. ("WWE") and LD Entertainment LLC ("LD" and, together with WWE, the "Funding Parties"), on the other hand (each of the Trustee and the Funding Parties shall be referred to herein as a "Party" and, together, the Trustee and the Funding Parties shall be referred to herein collectively as the "Parties"), with reference to the following facts and recitals:

### RECITALS

A.    On December 27, 2011 (the "Petition Date"), an involuntary bankruptcy petition was filed against the Debtor in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court") commencing the chapter 7 bankruptcy case known as *In re Genius Products, LLC*, currently pending in the Bankruptcy Court as Case No. 2:11-bk-62283-RN (the "Case"). On May 4, 2012, the Bankruptcy Court entered its order for relief. The Trustee is the duly appointed chapter 7 trustee in the Case.

B.    On August 14, 2013, WWE filed a proof of claim in the Case, Claim 6-1, in the amount of $6,110,022.41 plus interest, as well as a priority claim of $23,534.50 (the "WWE Claim").

C.    On February 3, 2015, LD filed a proof of claim in the Case, Claim 9-1, in the amount of $2,425,693.81 (the "LD Claim").

D.    As of the Agreement Date, the total amount of claims filed in the Case by parties other than WWE and LD was approximately $1,454,246.39.

E.    The Trustee has determined that he holds meritorious claims against The Weinstein Company LLC and The Weinstein Company Holdings LLC (collectively, "Weinstein") and Trevor Drinkwater (collectively, the "TWC Litigation").

F.    On March 30, 2015, the Bankruptcy Court entered its order authorizing the Trustee to employ Robins Kaplan LLP ("RK") as special litigation counsel to pursue the TWC Litigation on a contingent fee basis pursuant to terms set forth in an engagement letter dated January 30, 2015 (the "Engagement Letter").

G.    Pursuant to the terms of the Engagement Letter, the Trustee is required to advance the actual out-of-pocket costs of the TWC Litigation. The Trustee does not have sufficient cash in the estate to advance these expenses and approached WWE and LD with a request that they fund these items so that he may pursue the TWC Litigation. WWE and LD have agreed to fund certain costs of the TWC Litigation on the terms and conditions set forth below.

H.    WWE, LD and the Trustee entered into a certain Litigation Funding Agreement dated as of September 25, 2015 (the "Original Agreement"), which was approved by an Order of the Bankruptcy Court dated November 13, 2015 [Dkt. No. 152]. The Original Agreement provided that the Funding Parties would advance up to $250,000.

1

I.      The Trustee recently determined that $250,000 may not be sufficient to adequately fund his expenses in connection with the TWC Litigation.  He requested that the Funding Parties agree to fund up to an additional $116,680 for a total of $366,680.  The Funding Parties are willing to commit to fund this amount under the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing facts and recitals and of the covenants, promises, and conditions hereinafter set forth, the receipt and adequacy of which are hereby acknowledged, the Parties hereto agree as follows:

## AGREEMENT

1.      _Effective Date_.  The first business day following entry of a final, non-appealable order of the Bankruptcy Court approving this Agreement shall be referred to as the "_Effective Date_".

2.      _Bankruptcy Court Approval_.  This Agreement is subject to approval of the Bankruptcy Court in the Case.  Within seven days after execution of this Agreement by all of the Parties, the Trustee shall file with the Bankruptcy Court a motion seeking approval of this Agreement.

3.      _Advance_.  The Funding Parties shall advance up to a maximum amount of $250,000366,680 in the aggregate to fund reimbursable expenses (as set forth below) associated with the TWC Litigation on the terms and conditions set forth herein.

4.      _Limitation of Liability of Funding Parties_.  In no event shall the Funding Parties be required to advance or otherwise pay more than an aggregate of $250,000366,680 related to the TWC Litigation (the aggregate amount advanced from time to time, the "_Advance_").

5.      _Limitation of Liability of Trustee_.  In no event shall the Trustee have any personal liability to the Funding Parties.  Any recourse the Funding Parties may have related to the Trustee will be limited to the bankruptcy estate of Genius Products, LLC.

6.      _Reimbursable Expenses_.  Funds advanced will be used by the Trustee solely to satisfy, or reimburse RK  or the Trustee  for the following expenses arising out of or related to the TWC Litigation: (i) actual, ordinary and necessary out-of-pocket costs charged by third party vendors unrelated to RK; (ii) actual, ordinary and necessary out-of-pocket expenses paid by RK or the Trustee without markup; or (iii) only with the prior written consent of the Funding Parties, charges for services provided by RK or RK affiliates at greater than actual cost, such as e-discovery and trial-support services.  Reimbursable expenses shall not exceed $180,000200,000 for expert fees and costs, $21,00034,500 for deposition transcripts or $49,000132,180 for all other costs without the prior written consent of the Funding Parties (the "_Line Item Caps_").  Consent to modification of the Line Item Caps shall not be unreasonably withheld ; _provided_, _however_, that in no event shall the total amount advanced by the Funding Parties exceed $250,000366,680 in the aggregate.

7.      _Payment of Advances_.  Advances shall be made by the Funding Parties no later than 30 days following presentation of invoices by the Trustee.

8.    Allocation of Advances.  WWE shall be responsible for 2/3 and LD shall be responsible for 1/3 of each required payment.  In the event either of the Funding Parties fails to make any payment of a requested Advance pursuant to Section 9 hereof, following 10 days written notice and an opportunity to cure, (i) the other Funding Party shall make the entire payment and (ii) all allowed claims of the breaching Funding Party shall be deemed assigned to the other Funding Party.

9.    Allowed Claims of Funding Parties.  WWE shall have an allowed general unsecured claim in the amount of $6,232,468.62 plus an allowed §507(a)(2) priority claim of $23,534.50 without further application to the Bankruptcy Court.  LD shall have an allowed general unsecured claim in the amount of $2,425,693.81 without further application to the Bankruptcy Court.  Allowance of these claims shall be a condition to funding and shall be included in the order of the Bankruptcy Court approving the Agreement.  In the event of a surplus estate, the claims of the Funding Parties shall include, in addition to the amounts set forth herein, postpetition interest at the rate provided in section 685.010 of the California Code of Civil Procedure.

10.    Repayment of the Advance and Fee.  The Advance shall be an administrative expense with priority set forth in section 507(a)(2) of the Bankruptcy Code.  In addition, fromFrom the gross recovery by the Trustee in the TWC Litigation, the Funding Parties shall receive the first money recovered (in the same proportion as the Funding Parties funded the Advance) until they have been repaid the full amount of the Advance.  In the event the Advance exceeds $250,000 (the difference between the amount advanced and $250,000, the "Excess Advance"), the amount of the administrative expense shall be equal to $250,000 plus four times the amount of the Excess Advance (i.e., return of the Excess Advance plus a fee of three times the Excess Advance)(collectively, the "Advance Claim"). By way of example, if the Advance is $350,000, the administrative expense will be $650,000, which is the sum of $250,000 plus ($100,000 x 4).  The Advance Claim shall be paid 2/3 to WWE and 1/3 to LD.

11.    Preferred ReturnPrepetition Claim Repayment.  After the Advance Claim has been repaidpaid in full, and after RK has been paid its contingency fee as set forth in the Engagement Letter, the Funding Parties shall receive the first $500,000 of the Trustee's share of the recovery from the TWC Litigation, which shall reduce the Funding Parties' general unsecured claim (the "Preferred ReturnPrepetition Claim Repayment").  The repayment of the Advance and payment of the Preferred ReturnPrepetition Claim Repayment to the Funding Parties shall be made pro rata based on their general unsecured claims, with 72% going to WWE and 28% going to LD.  These payments shall be made as soon as reasonably practicable following receipt of funds by the Trustee.  Thereafter, at the time the Trustee distributes funds to prepetition unsecured creditors, (1) WWE shall be paid its priority claim and (2) the Funding Parties shall receive their pro rata share of distributions to prepetition general unsecured creditors based on the total amount of the allowed claims of the Funding Parties as set forth in paragraph 119 (i.e., not reduced by the Preferred Prepetition Claim Repayment) above divided by the total amount of all allowed claims of general unsecured creditors until such claims have been paid in full.  The foregoing notwithstanding, in no event shall the Funding Parties receive distributions (including the Preferred Prepetition Claim Repayment) in excess of the Advance Claim plus the total amount of their allowed claims as set forth in paragraph 9.  By way of example, assume the matter settles after the defendant files an answer but more than 60 days before trial and the Trustee recovers $13,076,923.08 from the TWC Litigation (resulting in a contingency fee for RK  of $5,076,923.08, and the Trustee's share of the recovery is $8,000,000), the Advance Claim is $250,000, proceeds of other estate assets is $300,000, chapter 7 administrative costs are $500,000, and general unsecured claims other than the claims of the Funding Parties are $1,500,000.  Upon payment of the

3

$8,000,000 to the Trustee, the Funding Parties would promptly receive repayment of the Advance Claim of $250,000 plus $500,000.  This leaves a balance of $7,250,000 for distribution, which is distributed $500,000 to administrative claims and $23,534.50 to WWE's priority claim, leaving $6,726,465.50 available for distribution to general unsecured creditors.  Of this amount, the Funding Parties would receive $5,681,784.55, in addition to the Advance Claim and the Preferred Prepetition Claim Repayment, the sum of  $5,733,205.32, which is the product of 6,726,465.5 x (6,232,468.62+2,425,693.81 $500,000) / (6,232,468.62+2,425,693.81 $500,000+1,500,000).

      12.    <u>Representations and Warranties of Parties</u>.  Each Party represents and warrants to the other Party that (a) such Party has the full right, capacity, power, and authority to execute and deliver this Agreement, to perform the Party's obligations hereunder, and to consummate the transactions contemplated hereby, and (b) this Agreement has been duly executed and delivered by the Party and, assuming due authorization, execution, and delivery by the other Parties, constitutes the legal, valid, and binding obligations of the Party enforceable in accordance with its terms and conditions.  Each Party further represents that it has had the opportunity to consult with attorneys of its own selection, and has carefully read and understands the scope and effect of the provisions of this Agreement.

      13.    <u>Interpretation</u>.  Each Party hereto has been represented by independent counsel in conjunction with the negotiation and formulation of this Agreement and, accordingly, this Agreement shall be construed as if negotiated and drafted jointly by each of the Parties hereto, and shall be interpreted and construed accordingly, and without regard to or aid of California Civil Code Section 1654.

      14.    <u>Expenses</u>.  Each Party shall bear its own costs, expenses, and attorney's fees, incurred in, or arising out of, or connected with, the preparation of this Agreement.

      15.    <u>Entire Agreement</u>.  This Agreement represents and contains the entire agreement and understanding among the Parties hereto with respect to the subject matter of this Agreement, and supersedes any and all prior oral and written agreements and understandings.  No representation, warranty, condition, understanding, or agreement of any kind with respect to the subject matter hereof shall be relied upon by the Parties unless incorporated herein.

      16.    <u>Third Party Beneficiaries</u>.  RK is an intended beneficiary of this Agreement.  Other than RK, this Agreement does not and is not intended to confer any rights or remedies upon any person other than the Parties.

      17.    <u>Severability</u>.  Should any of the provisions of this Agreement be held by a court of competent jurisdiction to be illegal, in conflict with any applicable law, or otherwise unenforceable for any reason, in whole or in part, the validity of the remaining portions or provisions of the Agreement and of the entire Agreement shall not be affected thereby, but shall be severable and shall remain in force and effect.

      18.    <u>Further Assurances/Cooperation</u>.  Each Party to this Agreement agrees to cooperate in a timely manner with the other Parties to carry out the purpose and effect of this Agreement including, without limitation, the execution, notarization and delivery of such other and further instruments, documents and writings as may reasonably be requested to effectuate the terms and conditions of this Agreement.

4

19.    Authority. By signing below, each signatory represents in its individual capacity that it has been duly authorized to enter into this Agreement on behalf of the Party for whom it is purporting to sign.

20.    Titles and Headings. Titles and headings of sections of this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

21.    Attorneys' Fees. In the event that any Party takes legal action with respect to the enforcement of this Agreement, the prevailing Party shall recover its costs, fees and expenses related to such action including, without limitation, reasonable attorneys' fees.

22.    Binding on Successors. Except as may otherwise be expressly consented and agreed to by the Parties, each and every provision, agreement, term, covenant, and condition herein contained to be performed, fulfilled, observed, and kept shall be binding upon the heirs, successors, executors, administrators, beneficiaries, and assigns of the respective Parties to this Agreement, and the rights hereunder, and all rights, privileges, and benefits arising under this Agreement and in favor of any Party, shall be available in favor of the heirs, successors, executors, administrators, and assigns thereof, respectively.

23.    Governing Law. This Agreement shall be governed by the laws of the State of California, and any question arising under this Agreement shall be construed or determined according to such law.

24.    Notices. All notices, requests, demands and other communications required under this Agreement shall be in writing, in English and shall be deemed to have been duly given if delivered (a) personally, (b) by facsimile transmission with written confirmation of receipt, (c) by overnight delivery with a reputable national overnight delivery service or (d) by mail or by certified mail, return receipt requested and postage prepaid. Any notice given shall be deemed given upon the actual date of such delivery. If notice is given, it shall be given at the address set forth below. It shall be the responsibility of the Parties to notify the other Parties in writing of any name or address changes.

If to the Trustee:

A. Siegel & Associates
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367

with a copy to:
Anthony A. Friedman, Esq.
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067

If to WWE:

James W. Langham
SVP & Assistant General Counsel
WWE
1241 East Main Street

5

Stamford, CT  06902

with a copy to:

Michael B. Lubic
K&L Gates LLP
10100 Santa Monica Blvd., Ste. 700800
Los Angeles, CA 90067

If to LD:

LD Entertainment
9000 Sunset Blvd., Ste. 600
West Hollywood, CA 90060
Attn.:  Jesse Liddell

With a copy to:

Jay Shanker
McAfee & Taft
211 N. Robinson, Suite 1000
Two Leadership Square, 10th Floor
Oklahoma City, OK 73102

Each of the parties to this Agreement may specify a different address by giving notice in accordance with this Section 24 to each of the other parties hereto.

25.    Retention of Jurisdiction.  The Bankruptcy Court shall retain jurisdiction to resolve any disputes that may arise under this Agreement.

26.    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed one and the same instrument.  This Agreement also may be executed via facsimile or pdf.  In that event, the Agreement shall be effective when the last required signature is faxed or emailed and received by counsel for each of the Parties.

27.    Amendment and Waiver.  No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by the Parties.  No waiver by any Party of any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such occurrence.

28.    Recitals.  The recitals of fact set forth above are incorporated by reference as if fully set forth in this Agreement.

6

**Alfred H. Siegel as Chapter 7 Trustee for Genius Products, LLC**

_____

**World Wrestling Entertainment, Inc.:**

By: _____
Its: _____

**LD Entertainment LLC:**

By: _____
Its: _____

7

Document comparison by Workshare 9 on Friday, May 26, 2017 3:17:54 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://MP-DMS/LA/61083611/2 |
| Description | #61083611v2<LA> - Litigation funding agreement Sep 24 15 |
| Document 2 ID | C:\Users\shemdb\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\4BSC Litigation Funding Agreement-USE_Active01-55568342-v15.doc |
| Description | C:\Users\shemdb\AppData\Local\Microsoft\Windows\INetCache\Content.Outlook\4BSC Litigation Funding Agreement-USE_Active01-55568342-v15.doc |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 30 |
| Deletions | 19 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 49 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90017.

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR APPROVAL OF AMENDMENT TO POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ALFRED H. SIEGEL IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **_June 5, 2017_**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Brett Bissett    bbissett@mckoolsmithhennigan.com, sberson@mckoolsmithhennigan.com
- Timothy Bortz    ra-li-ucts-bankrupt@pa.gov
- Alicia Clough    aclough@loeb.com, ladocket@loeb.com;klyles@loeb.com;mnielson@loeb.com
- Joseph Corrigan    Bankruptcy2@ironmountain.com
- Alan R Friedman    afriedman@foxrothschild.com, dkatz@foxrothschild.com
- Anthony A Friedman    aaf@lnbyb.com
- Anthony A Friedman    aaf@lnbyb.com
- Lindsay M Holloman    LHolloman@sheppardmullin.com, cliu@foxrothschild.com
- Lance N Jurich    ljurich@loeb.com, karnote@loeb.com;ladocket@loeb.com
- Benjamin R King    bking@loeb.com, karnote@loeb.com;ladocket@loeb.com
- Mette H Kurth    mkurth@foxrothschild.com, pchlum@foxrothschild.com;mette-kurth-7580@ecf.pacerpro.com
- Michael B Lubic    michael.lubic@klgates.com, jonathan.randolph@klgates.com
- James P Menton    JPMenton@rkmc.com
- Manoj D Ramia    manoj.ramia@klgates.com, klgatesbankruptcy@klgates.com
- Moji Saniefar    , msaniefar@yahoo.com
- David B Shemano    dshemano@robinskaplan.com
- Alfred H Siegel (TR)    Al.siegel@asiegelandassoc.com, Lisa.irving@asiegelandassoc.com;Margo.tzeng@asiegelandassoc.com;asiegel@ecf.epiqsystems.com
- Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com
- Nicola G Suglia    nsuglia@fleischerlaw.com
- Wayne R Terry    wterry@hemar-rousso.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **_June 5, 2017_**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing persons and the judge here constitutes a declaration that mailing to those persons and judge will be completed no later than 24 hours after the document is filed.

| | | |
|---|---|---|
| James W. Langham | Michael B. Lubic | LD Entertainment |
| WWE-SUP and Asst. Gen. Counsel | K&L Gates LLP | 9000 Sunset Blvd, Ste 600 |
| 1241 E. Main Street | 10100 Santa Monica Blvd, Ste 800 | West Hollywood, CA  90060 |
| Stamford, CT  06902 | Los Angeles, CA  90067 | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Jay Shenker
McAfee & Taft
211 N. Robinson, Suite 1000
Two Leadership Square, 10th Floor
Oklahoma City, OK  73102

RSN
Brett Bissett & Michael J Heyman
K&L Gates LLP
10100 Santa Monica Blvd
Los Angeles, CA 90067

Genius Products LLC
3301 Exposition Blvd, Ste 100
Santa Monica, CA  90404-5045

RSN
Timothy A. Bortz*
PA Department of Labor and Industry
625 Cherry St. Rm 203
Reading, PA 19602-1184

☐ Service information continued on attached page

---

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *June 5, 2017,* I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Attorney Service**
The Hon. Sheri Bluebond
United States Bankruptcy Court
255 E. Temple Street, Suite 1539
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| June 5, 2017 | Lisa Masse | /s/ Lisa Masse |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

Label Matrix for local noticing
0973-2
Case 2:11-bk-62283-BB
Central District of California
Los Angeles
Mon Jun  5 14:03:45 PDT 2017

Alfred H Siegel (TR), Trustee
Robins Kaplan LLP
2049 Century Park East, Suite 3400
Los Angeles, CA 90067-3208

Canon Financial Services, Inc. c/o Nicola G.
Fleischer, Fleischer & Suglia
Plaza 1000 at Main Street
Suite 208
Voorhees, NJ 08043

Genius Products LLC
3301 Exposition Blvd Ste 100
Santa Monica, CA 90404-5045

Grobstein Teeple Financial Advisory Services
6300 Canoga Ave., Ste. 1130W
Woodland Hills, CA 91367-8015

Iron Mountain Information Management, LLC
745 Atlantic Avenue
Boston, MA 02111-2735

The Weinstein Company LLC
345 Hudson Street
New York, NY 10014-4502

Thought Equity Motion Inc
1530 16th St 6th Fl
Denver, CO 80202-1447

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

World Wrestling Entrtainment Inc
1241 E Main St
Stamford, CT 06902-3520

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

Canon Financial Services, Inc.
c/o Nicola G. Suglia, Esq.
Fleischer, Fleischer and Suglia
Plaza 1000 at Main Street, Suite 208
Voorhees, NJ 08043

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

Iron Mountain Information Management, Inc.
ATTN: Joseph Corrigan
745 Atlantic Avenue, 10th Floor
Boston, MA 02111-2735

Kutak Rock LLP
Attn: Chad T Nitta, Esq, Adam Hirsch, Es
1801 California St, Suite 3000
Denver Colorado 80202-2652

LD Entertainment LLC
c/o Jay Shanker Esq
211 N Robinson Ave 10th Flr
Oklahoma City OK 73102-7139

Marvel Characters, Inc
c/o RMS Bankruptcy Recovery Services
P.O. Box 5126
Timonium, Maryland 21094-5126

T3Media Inc. Formerly Thought Equity Motions
1530 16th St., 6th Floor
Denver, Colorado 80202-1447

The Travelers Indemnity Company
c/o RMS Bankruptcy Recovery
P.O. Box 5126
Timonium, Maryland 21094-5126

Alfred H Siegel (TR)
A. Siegel & Associates
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367-4911

Jared Drinkwater
c/o Loeb & Loeb LLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067-4120

John Mueller
c/o Loeb & Loeb LLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067-4120

Matthew Smith
c/o Loeb & Loeb LLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067-4120

Michael Radiloff
c/o Loeb & Loeb LLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067-4120

Mitchell Budin
c/o Loeb & Loeb
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067-4120

Timothy A Bortz
PA Department of Labor & Industry - UCTS
625 Cherry St Rm 203
Reading, PA 19602-1184

Trevor Drinkwater
c/o Loeb & Loeb LLP
10100 Santa Monica Blvd.
Suite 2200
Los Angeles, CA 90067-4120

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Courtesy NEF    Case 2:11-bk-62283-BB    Doc 174    Filed 06/05/17    Entered 06/05/17 16:13:01    Desc
(u)LD Entertainment    (u)Levene Neale, Bender, Yoo & Brill LLP
Main Document    Page 35 of 35

(u)Robins Kaplan LLP

(d)Iron Mountain Information Management, LLC
745 Atlantic Avenue
Boston, MA 02111-2735

(d)Thought Equity Motion Inc
1530 16th St 6th fl
Denver, CO 80202-1447

(d)World Wrestling Entrtainment Inc
1241 E Main St
Stamford, Ct 06902-3520

End of Label Matrix
Mailable recipients    26
Bypassed recipients     7
Total                  33